UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROBERT DORAN, MARIA BAEZ,
ALEXANDER SHAPOROV, and
BERNARD LINN,

                Plaintiffs,                15-cv-7217 (PKC)

       -against-                          OPINION
                                                          AND ORDER
ERIN IVES, DENNIS ROSEN, DAN COYNE,
ANNA COSCHIGNANO, ROBERT BYRNES,
RUSSELL S. RIZZO, CHRISTOPHER
MULHALL, EDWARD MICHAEL DRESSLER,
SEAN MAHONEY, GABRIELLE ARES, and
JOHN and JANE DOES 1-5
(said names being fictitious, the persons intended
being those who aided and abetted the unlawful
conduct of the named Defendants),[1]

                Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Robert Doran, Maria Baez, Alexander Shaporov, and Bernard Linn are employees of the New York State Department of Health, Office of the Medicaid Inspector General ("OMIG"). On September 11, 2015, plaintiffs filed Doran, et al., v. N.Y.S. Office of the Medicaid Inspector General, et al., 15-cv-7217 (PKC) ("Doran I"), alleging OMIG and nine individual defendants discriminated against them between 2012 to 2015. The Court granted in part and denied in part defendants' motion to dismiss and motion for summary judgment, substantially reducing the number of remaining claims and defendants in that action. On May 15, 2020, plaintiffs filed Doran, et al., v. N.Y.S. Office of the Medicaid Inspector General, et al., 20-cv-3754 (PKC) ("Doran II") in which they allege that a mostly new group of individual

---

[1] On consent of the parties (Doc 283 at 30–31; Doc 284 at 34), the Clerk is directed to amend the caption to reflect defendants who remain in the action.

defendants retaliated against them between 2015 to 2020 for litigating Doran I.  The Court subsequently consolidated Doran I and Doran II for all purposes and ordered plaintiffs to submit a consolidated complaint.  (Doc 277).  The Third Amended & Consolidated Complaint ("TAC") brings claims against eleven individual defendants, five of whom were named in or remain from Doran I.  (Doc 278).

Defendants move to partially dismiss the TAC pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Defendants primarily argue that the Doran II claims against five of the individual defendants should be dismissed because these defendants lacked personal involvement in the alleged discriminatory conduct and there is no causal connection between plaintiffs' protected activity and the retaliatory conduct.  They further urge that certain conduct alleged in the TAC fails to state a retaliation claim under federal, New York state and New York City law.

BACKGROUND

The allegations in Doran I are well described in this Court's Memorandum and Order of March 2, 2017 (Doc 92 ("MTD Opinion")) and in its Opinion and Order of September 27, 2019 (Doc 202 ("Summary Judgment Opinion")).  The Court assumes familiarity with those decisions.  The Court will briefly review the claims in Doran I before turning to the allegations in Doran II.

I.   The Doran I Claims.

On September 11, 2015, plaintiffs filed Doran I asserting claims against OMIG and nine individual defendants.  In that action, plaintiffs alleged that defendants discriminated against them based on race, sex, national origin, age and Jewish ancestry; retailed against them for complaining about such discrimination; and created a hostile work environment.  Many of plaintiffs' claims revolved around appointments, hiring and promotions decisions made during

defendant Anna Coschignano's tenure as Deputy Medicaid Inspector General ("DMIG") from March 2012 to December 2015.  The remaining defendants from Doran I are Dennis Rosen (in his official capacity), Coschignano, Dan Coyne, Russell Rizzo and Robert Byrnes.  There are seven surviving claims in Doran I brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), the Civil Rights Act of 1871, 42 U.S.C. § 1983; N.Y. Exec. L. § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. ("NYCHRL").  (See generally TAC ¶¶ 531–54).

II.   Plaintiffs.

OMIG is a New York State agency with approximately 400 employees that investigates fraud and other abuse in the Medicaid program.  (TAC ¶¶ 59–60).  Plaintiffs are OMIG employees that are stationed in its New York City office.  (TAC ¶ 17).  They work as Medicaid Investigators and Management Specialists within OMIG's Division of Medicaid Investigations ("DMI"), performing and supervising Medicaid fraud investigations.  (TAC ¶¶ 18–19).  The Court has previously summarized OMIG's organizational structure:

> Medicaid Investigators range from Levels 1-5, with Level 1 being the lowest position, Level 5 being a director level position, and the levels in between progressively increasing in the amount of supervisory responsibility they entail and the complexity of the cases to which they are assigned. Management Specialists review Medicaid participant applications.

(MTD Opinion at 2 (internal citations omitted)); see also TAC ¶¶ 23–28).  After Doran I was filed, the titles of the Medicaid Investigator 1 and Medicaid Investigator 2 positions were changed to Investigative Specialist 1 with pay grade levels based on a civil service scale.  (TAC ¶ 37 n.1).

Plaintiff Robert Doran is a 63 year old white-Caucasian man of non-Italian ancestry.  (TAC ¶ 30).  He is currently a Level 2 Medicaid Investigator (MI-2) and has held that position for over ten years.  (TAC ¶ 37).

3

Plaintiff Maria Baez is a 42 year old Hispanic woman. (TAC ¶ 39). She has been continuously employed by OMIG as an MI-2 investigator since August 2008. (TAC ¶¶ 45–46).

Plaintiff Alexander Shaporov is a white-Caucasian man of Russian ancestry who was born in Russia and immigrated to the U.S. when he was 13 years old. (TAC ¶¶ 47–49). Shaporov has been employed at OMIG since February 2009 and is currently an MI-2 investigator. (TAC ¶¶ 51–52).

Plaintiff Bernard Linn a 68 year old white-Caucasian man of Jewish heritage and ancestry. (TAC ¶ 54). Linn has held the position of Level 2 Management Specialist (MS-2) since 2006. (TAC ¶ 57).

III.   Defendants.

Except for arguing that certain of the alleged retaliatory conduct does not constitute an adverse employment action, the allegations against Rosen, Erin Ives, Coschignano, Coyne, Rizzo and Gabrielle Ares are not contested on defendants' motion to dismiss.[2] Defendants urge that the TAC fails to state retaliation claims against five of the individual defendants: Robert Byrnes, Christopher Mulhall, Edward Michael Dressler, Sean Mahoney and Edward Meyer (the "Moving Defendants"). All individual defendants except for defendant Ives are sued in their individual capacities. (TAC ¶¶ 61, 72, 75, 81, 87, 98, 101, 105, 109).

Defendant Robert Byrnes is a white-Caucasian man. (TAC ¶ 73). During the relevant time period Byrnes was a MI-4, then a MI-5, and served as the Assistant Medicaid Investigator in Charge for the New York City office. (TAC ¶ 74). Byrnes was also named as a defendant in Doran I.

---

[2] All individual defendants move to dismiss certain retaliation claims related to OMIG's 180-Day Policy and the hiring process for the MS-3 position but their arguments do not turn on the individualized conduct of each defendant.

4

Defendant Christopher Mulhall is a white-Caucasian man. (TAC ¶ 88). During the relevant period, Mulhall was an Assistant Medicaid Inspector General and became acting DMIG on October 21, 2020. (TAC ¶¶ 89–80). Plaintiffs allege that Mulhall has authority to make personnel decisions including promotions, demotions, reassignments and salary increases for DMI employees. (TAC ¶ 93). They further allege that Mulhall was hired at OMIG due to his prior relationship with Coschignano and without any formal interview or recruitment process. (TAC ¶ 94).

Defendant Edward Michael Dressler is a white-Caucasian man. (TAC ¶ 95). During the relevant time period, Dressler was an Assistant Medicaid Investigator Charge and MI-4 who reported to Coyne and Mulhall. (TAC ¶ 96).

Defendant Sean Mahoney is a white-Caucasian man. (TAC ¶ 99). During the relevant time period, Mahoney was an Investigative Specialist 2 and reported to Dressler. (TAC ¶ 100).

Defendant Edward Meyer is a white-Caucasian man who during the relevant time period was Chief of Investigations for OMIG's Albany Office. (TAC ¶¶ 106–07). He reported directly to Coyne and indirectly to Rosen. (TAC ¶ 108).

IV.  Challenged Promotions.

Plaintiffs allege that defendants have continued to deny them promotions in retaliation for filing and litigating Doran I. (TAC ¶ 366). The TAC alleges that all defendants were aware of plaintiffs' lawsuit and employment discrimination claims in Doran I. (TAC ¶¶ 370–71). The TAC contends that no DMI employees who have opposed alleged discriminatory practices at OMIG have been promoted since the Doran I complaint was filed. (TAC ¶¶ 373–74).

In March 2015, Rosen became Medicaid Inspector General of OMIG. (TAC ¶ 372). Plaintiffs allege that the discriminatory practices at OMIG continued under Rosen's leadership. (TAC ¶¶ 372–73). According to plaintiffs, OMIG managers violate the agency's rules designed to protect against unlawful discrimination, while taking adverse actions against OMIG employees that pursue complaints. (TAC ¶¶ 367–68).

Plaintiffs allege that OMIG, at Rosen's direction, engaged in a strategy of changing the requirements for job postings to fit the backgrounds of his preferred candidates and, as a result, excluded employees like plaintiffs, who engaged in protected activity. (See, e.g., TAC ¶¶ 419–21). As part of this strategy, OMIG shifted leadership positions from the NYC office to the Albany office where complaints of discrimination by investigators were less common. (TAC ¶¶ 422–24).

In Doran II, plaintiffs challenge the denial of four promotions at OMIG between 2018 and 2019.[3]

Around April 2019, Stephanie Paton was promoted to the Assistant Medicaid Inspector General for Investigations ("AMIG") in OMIG's NYC Office (the "2019 AMIG Position"). (TAC ¶ 416). The TAC alleges that Rosen, Coyne and Ares changed the job qualifications for the 2019 AMIG position to assure the selection of Paton, who had not previously complained of discrimination. (TAC ¶ 404). The decision to select Paton was made by Rosen, Coyne and Ares. (TAC ¶ 416). Doran and Linn interviewed for the position but were denied the promotion. (TAC ¶¶ 411, 414, 447–48).

---

[3] Doran's allegations also discuss the November 2017 promotion of Coyne to DMIG of DMI. The TAC identifies the denial of this promotion as a "background allegation" and does not appear to allege that Coyne's promotion was unlawful. (See generally TAC ¶¶ 386–401).

Around April 2019, Eunice Green, a former OMIG employee, was hired to be DMI's New York City Manager of Medicaid Investigations (the "2019 Manager of Medicaid Investigations Position"). (TAC ¶ 427). Rosen, Coyne, Mulhall and Ares recruited Green and made the decision to select her for the position. (TAC ¶¶ 427–28). The TAC alleges that Rosen, Coyne, Mulhall and Ares hired Green because she never engaged in protected activity and they wanted to avoid promoting OMIG employees from the New York City office who previously complained of discrimination. (TAC ¶¶ 429–31). Doran and Linn interviewed and were more qualified for the position but were denied the promotion. (TAC ¶ 426–27, 430, 454–55, 458).

In November 2018, Mildred Palermo was promoted to Investigative Specialist 2, a supervisory position (the "2018 Investigative Specialist 2 Position"). (TAC ¶¶ 433, 440). The TAC alleges that the job posting was changed to remove a preference for candidates with a degree in accounting, criminal justice or a related field, and reduced the requirement for investigative experience from ten to seven years. (TAC ¶¶ 435–36). Coyne, with the approval of Rosen, promoted Palermo, who had only worked at OMIG for a short time and received "workplace violence complaints." (TAC ¶ 440). Palermo had not engaged in protected activity. (TAC ¶ 441). Doran, Linn, Baez and Shaporov all applied for the position and were more qualified than Palermo. (TAC ¶¶ 433, 461, 481, 491). In October 2018, plaintiffs were each interviewed for the position by Meyer and two auditors who are not named as defendants. (TAC ¶¶ 437, 464, 485, 495).

In mid-2019, Vladimir Polishnik was promoted to Management Specialist 3 (the "2019 Management Specialist 3 Position"). (TAC ¶ 521). Rosen, Coyne and Ares allegedly denied plaintiffs the opportunity to apply for this position. (TAC ¶ 519). Plaintiffs were more

7

qualified than Polishnik, who lacked the background and experience in investigations required for the position. (TAC ¶ 522).

V.  Other Discriminatory and Retaliatory Behavior.

Baez alleges that certain defendants retaliated against her by giving her negative performance evaluations. On February 2, 2017, her supervisor, Greg Waring, and Dressler gave Baez a "satisfactory" rating but included allegedly false negative comments claiming Baez was late and her work quality was poor. (TAC ¶ 467). Baez's 2016 evaluation from Waring contained only positive comments. (TAC ¶ 468). Baez asked Waring why her evaluation changed in 2017 and Waring claimed that he was pressured to give negative comments by DMI management, which included Rosen, Coyne and Byrnes. (TAC ¶¶ 469–70). On July 11, 2018, Dressler, acting under pressure from DMI management including Rosen, Coyne and Byrnes gave Baez an "unsatisfactory" six-month certification. (TAC ¶ 472). In January 2019, Baez received an "unsatisfactory" performance rating for 2018 from Dressler and her new supervisor, Mahoney. (TAC ¶ 474). The 2018 evaluation falsely claimed that Baez was not doing her work and undercounted the number of cases she was handling to criticize her performance. (TAC ¶¶ 474, 476). In August 2019, Baez again received an "unsatisfactory" six-month certification. (TAC ¶ 477). The TAC alleges that in January 2020, after the Court denied summary judgment in Doran I, defendants "panicked" about a potential trial and changed Baez's 2019 evaluation to "satisfactory." (TAC ¶ 478).

Shaporov alleges retaliatory conduct related to several traffic tickets that he received on March 3, 2020, while operating a state-owned vehicle and traveling to an OMIG training in Albany. (TAC ¶¶ 501–03). One of the tickets was for illegally tinted windows.

(TAC ¶ 504). Shaporov alleges that he asked Dressler and Mulhall for assistance in defending the tickets but that they refused to help. (TAC ¶¶ 505–07).

In September 2018, OMIG instituted a new policy requiring all DMI investigators to complete 15 priority cases within 180 days (the "180-Day Policy"). (TAC ¶ 512). The policy initially only applied to OMIG's New York City office, and plaintiffs allege that it was put in place to retaliate against investigators in that office who had pursued discrimination complaints. (TAC ¶¶ 515–16).

VI.   Doran II's Claims.

The SAC sets forth six designated Doran II claims covering conduct from 2015 to 2020. Plaintiffs assert retaliation claims against all individual defendants under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment Equal Protection Clause (Count IX), the NYSHRL (Count XII) and the NYCHRL (Count XIII). Doran seeks injunctive relief under the ADEA for his retaliation claims (Count VIII). Lastly, Doran and Linn allege age discrimination against Rosen, Coyne, Mulhall and Ares in violation of the NYSHRL (Count X) and the NYCHRL (Count XI).

Defendants move to dismiss (1) all of the Doran II retaliation claims against Byrnes, Mahoney, Dressler, Meyer and Mulhall, (2) plaintiffs' retaliation claims challenging the 180-Day Policy against all individual defendants and (3) Baez, Doran and Linn's retaliation claims challenging the 2019 Management Specialist 3 Position against all individual defendants. (Defs. Mem. at 12 (Doc 283)).

The Court set forth the applicable pleading standard under Rule 12(b)(6), Fed. R. Civ. P. in the Memorandum and Order ruling on the Doran I motion to dismiss. (MTD Opinion at 15–17).

DISCUSSION

I. Personal Involvement of Defendants.

The Moving Defendants urge that Plaintiffs' Doran II retaliation claims against them must be dismissed because they were not personally involved in the alleged discriminatory conduct. The Court has previously described the standards for holding individual defendants liable under section 1983, the NYSHRL and the NYCHRL and will only briefly review them. (MTD Opinion at 20–23; Summary Judgment Opinion at 15–19).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Under section 1983 an individual may only be held liable if he or she "is personally involved in the alleged deprivation." Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks omitted); see also Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 82 (2d Cir. 2015). A defendant, additionally, "must act with discriminatory purpose." Raspardo v. Carlone, 770 F.3d 97, 125 (2d Cir. 2014). Under the NYSHRL and NYCHRL, individual liability similarly requires personal involvement of a defendant. Feingold v. New York, 366 F.3d 138, 157–58 (2d Cir. 2004).

The TAC alleges that during the relevant time period all of the individual defendants were "responsible for developing, implementing and enforcing personnel policies and procedures affecting the terms and conditions of employment of employees within OMIG, including the Plaintiffs." (TAC ¶ 110). But beyond this bare assertion, plaintiffs fail to allege the personal involvement of the Moving Defendants in much of the alleged retaliatory conduct.

Upon review of the well-pleaded factual allegations in the TAC, the Court concludes that only the Doran II retaliation claims listed below plausibly allege the personal

involvement of a Moving Defendant.  Moreover, all claims against Meyer will be dismissed for lack of personal involvement.

Baez states a retaliation claim against Byrnes, Mahoney and Dressler.  The TAC alleges that DMI management, including Byrnes, pressured Baez's supervisor to give Baez negative performance evaluations.  (TAC ¶¶ 469–70, 479).  Baez also alleges that Dressler and Mahoney gave her an unsatisfactory six-month certifications and negative performance evaluations that included false criticisms regarding her performance.  (TAC ¶¶ 472–79).

Doran and Linn state a retaliation claim against Mulhall.  The TAC alleges that Mulhall interviewed Doran and Linn for the 2019 Manager of Medicaid Investigations position. (TAC ¶¶ 426, 454). It further contends that Mulhall helped recruit externally for the position to hire Eunice Green to avoid promoting OMIG employees such as Doran and Linn who had previously complained of discrimination.  (TAC ¶¶ 427–28, 431–32, 455–56, 459–60).

Shaporov alleges the personal involvement of Dressler and Mulhall related to Shaporov's request for assistance with traffic tickets.  But for reasons to be explained, Shaporov has failed to allege that the retaliatory conduct related to the traffic tickets constituted an adverse employment action.

Lastly, the retaliation claims against Meyer are dismissed.  The TAC alleges that Meyer, along with two auditors, interviewed each of the plaintiffs for the 2018 Investigative Specialist 2 Position.  (TAC ¶¶ 437, 464, 485, 495).  The TAC states that at one-point Meyer told Doran that he would decide who was hired for the position (TAC ¶ 438), but plaintiffs later allege that individual defendants, not including Meyer, selected Mildred Palermo for the position.  (TAC ¶¶ 440, 466, 488, 498).  During Shaporov's interview for the 2018 Investigative Specialist 2 Position, he was questioned about "why he even needed a supervisory position" by an unnamed individual.  (TAC ¶ 496).  Baez alleges that Meyer is friends with Doran I defendant

11

and former Medicaid Inspector General Cox but that during the interview Meyer said he had not spoken with Cox recently. (TAC ¶ 486). Although Meyer participated in the interviews of plaintiffs, the allegations do not plausibly support an inference of retaliatory animus or that Meyer was personally involved in selecting Palermo.

II.     Retaliation Claims.

Plaintiffs bring retaliation claims under section 1983, the NYSHRL and the NYCHRL. A retaliation claim under the NYSHRL is construed under the same standards as its federal counterparts, including Title VII and 1983. (See MTD Opinion at 28–29).[4]

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him [or her], (2) because he [or she] has opposed any unlawful employment practice." Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018) (quoting Vega, 801 F.3d at 90 (internal quotation marks omitted)); see also (MTD Opinion at 28–29).

A.     Pleading Adverse Employment Actions.

Under section 1983 and the NYSHRL, "[a]n adverse employment action in a retaliation case includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Dupont, 888 F.3d at 626–27 (internal quotation marks omitted). In determining whether an employment action is

---

[4] The NYCHRL is to be construed more liberally than the federal standards and the NYSHRL. (MTD Opinion at 28–29). "In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.' " McHenry v. Fox News Network, LLC, ___ F. Supp. 3d ___ , 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020) (Engelmayer, J.) (quoting N.Y. Exec. Law § 300). The amendments to the NYSHRL only apply to conduct after the amendment's effective date of August 12, 2019. Id. Accordingly, the Court will apply the post-amendment NYSHRL standard on this motion to alleged discriminatory or retaliatory conduct occurring after the amendment's effective date.

materially adverse "context matters." Vega, 801 F.3d at 90, and "[a]lleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." Tepperwien v. Energy Nuclear Operations., Inc., 663 F.3d 556, 568 (2d Cir. 2011). "The NYCHRL is construed more liberally than section 1983 or NYSHRL, which serve as the floors below which the NYCHRL must not fall." (Summary Judgment Opinion at 43 (citation omitted)). Where the Court concludes plaintiffs have alleged an adverse employment action for purposes of section 1983 and the NYSHRL, it also concludes that the broader NYCHRL or post-August 2019 NYSHRL standard has been met.

First, Byrnes, Mahoney and Dressler argue that negative performance evaluations and commentary that Baez received would not dissuade a reasonable employee from making a charge of discrimination. The Second Circuit has plainly stated in the context of a retaliation claim that, "of course, a poor performance evaluation could very well deter a reasonable worker from complaining." Vega, 801 F.3d at 92–23. Baez alleges that a series of reviews and six-month certifications contained false negative commentary or negative performance evaluations. (TAC ¶¶ 472, 474, 469–70). She asserts that the "unsatisfactory" ratings remain in her permanent personnel file and affect her ability to receive promotions and salary raises. (TAC ¶ 480). Viewed in the aggregate, Baez plausibly alleges a material adverse employment action.

Second, Dressler and Mulhall urge that their failure to assist Shaporov with driving tickets does not constitute an adverse employment action. On March 3, 2020, Shaporov received several driving tickets while driving a state vehicle during the course of his employment. (TAC ¶¶ 502–03). The TAC specifically identifies only one of those tickets, which was for illegally tinted windows. (TAC ¶ 504). Shaporov contends that Dressler and Mulhall refused to assist him with the tickets or provide a letter stating that Shaporov was an OMIG investigator on state business and driving a state car at the time of the traffic stop. (TAC

¶¶ 505, 507).  Shaporov had to hire an attorney at his own expense to have the charges dismissed.  (TAC ¶ 506).  Based on the allegations in the TAC, Shaporov has not plausibly alleged that he suffered an adverse employment action.  In March 2020, according to the TAC, Mulhall was an Assistant Medicaid Inspector General and Dressler was an Assistant Medicaid Investigator.  (TAC ¶¶ 89, 96).  The TAC fails to allege facts supporting a reasonable inference that Dressler's or Mulhall's responsibilities included helping OMIG employees defend traffic tickets.  To the extent Shaporov's status as an OMIG employee was relevant in defending against the traffic tickets, Shaporov was free to prove this fact in the adjudication of the traffic violations.  For reasons explained, Shaporov also fails to state a claim under the NYCHRL or post-amendment NYSHRL standard.  Although this broader standard does not consider whether the employer's conduct was material, Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010), Shaporov fails to plausibly allege that Dressler and Mulhall's conduct was retaliatory based on their roles and responsibilities at OMIG.

      B.      <u>Pleading of a Causal Connection.</u>

Plaintiffs may allege a causal connection "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.' "  Littlejohn, 795 F.3d at 319 (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).  Under the NYSHRL and NYCHRL, plaintiffs must also plead a causal connection and may do so based on temporal proximity.  See e.g., Harrington v. City of New York., 157 A.D.3d 582, 585–86 (1st Dep't 2018).

Moving Defendants argue that plaintiffs have failed to allege an adverse employment action was taken because of a protected activity.  They urge that the temporal

14

proximity between plaintiffs last protected activity, the filing of Doran I in September 2015, and any retaliatory conduct alleged in Doran II is too remote to plead a causal connection.

As an initial matter, over the course of litigating Doran I plaintiffs have engaged in protected activity subsequent to the filing of the complaint. See Treglia v. Town of Manlius, 313 F.3d 713, 720–21 (2d Cir. 2002) (rejecting a similar argument because it "ignore[d] [plaintiff's] protected activity" between the filing of an administrative complaint and the retaliatory conduct, including the submission of "a list of witnesses"); Infantolino v. Joint Indus. Bd. of Elec. Indus., 582 F. Supp. 2d 351, 359 (E.D.N.Y. 2008) ("I conclude that [plaintiff's] September 2005 opposition to JIB's motion for summary judgment constituted the last protected activity . . . ."); cf. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 174–75 (2d Cir. 2005) (noting that Title VII's "anti-retaliation clause protects an individual who has 'participated in any manner' in a Title VII related proceeding" (citing 42 U.S.C. § 2000e–3(a))); Cruz v. Lee, 14-cv-4870, 2016 WL 1060330, at *7 (S.D.N.Y. Mar. 15, 2016) (Roman, J.) ("The [earlier filed] case was pending—and the protected activity was therefore ongoing—when the alleged adverse action occurred.").

The Second Circuit has "'not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (quoting Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)). Accordingly, on a motion to dismiss a district court may "'exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" Id. (quoting Goord, 558 F.3d at 129). The Court also keeps in mind that at the pleadings stage "the burden for establishing a prima facie case of retaliation is 'de minimis.'"

Duplan, 888 F.3d at 626 (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)) (concluding that plaintiffs plausibly alleged a causal connection).

   The Court concludes that plaintiffs have plausibly alleged a causal connection for their retaliation claims, not otherwise dismissed for lack of personal involvement, against the Moving Defendants. Plaintiffs have actively pursued their Doran I claims since the Court granted in part and denied in part defendants motion to dismiss on March 2, 2017. (Doc 92). For instance, plaintiffs opposed defendants' motion for summary judgment on February 25, 2019 (Doc 193).[5] The retaliatory conduct alleged in the TAC all occurred between 2017 and early 2020. Moreover, plaintiffs allege an ongoing pattern of retaliation since Doran I, including that no DMI employees who have opposed discrimination at the agency, including plaintiffs and seven other employees listed in the TAC have been promoted by the individual defendants. (TAC ¶¶ 373–74).

   As this Court previously observed in Doran I, "[e]xperience has shown that a complaint may be sufficient to withstand a motion to dismiss, but, after discovery, the facts may look quite differently on a motion for summary judgment or at trial." (MTD Opinion at 36). Drawing all reasonable inferences in plaintiffs' favor, and considering plaintiffs' ongoing and contested litigation against multiple individual defendants at OMIG and the ongoing pattern of retaliation and discrimination alleged at that agency, the allegations in the TAC are sufficient to plausibly allege a causal connection.

---

[5] On a motion to dismiss the Court may take judicial notice of the docket sheet. Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).

C.      Defendants Remaining Challenges to Alleged Retaliatory Conduct.

i.      The 180-Day Policy.

Defendants urge that all of plaintiffs' claims based on the 180-Day Policy should be dismissed. In September 2018, Coyne and Rosen imposed on plaintiffs and all DMI investigators in the New York City office a new policy requiring them to complete 15 priority cases within 180 days. (TAC ¶ 512). Initially, the policy did not apply to investigators in the Albany and Buffalo DMI offices. (TAC ¶ 513). After a union grievance was filed in October 2018, the policy was changed to apply to all offices. (TAC ¶ 514). Plaintiffs allege that the policy was put in place to pressure and retaliate against investigators in the New York City office who have engaged in protected activity and that it is not enforced in other offices. (TAC ¶¶ 515–16). The TAC alleges that defendants undercounted the number of cases Baez handled under the policy and used this to criticize her performance. (TAC ¶ 517). It further alleges that defendants blocked Shaporov from partnering with his usual colleague to complete 15 priority cases under the policy. (TAC ¶ 518).

The generalized allegations in the TAC do not allege which individual defendants enforced the policy in a discriminatory manner against plaintiffs. (TAC ¶¶ 517–18); cf. Iqbal, 556 U.S. at 681 ("These bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim."). Moreover, the TAC only makes the conclusory allegation that the policy was enforced solely at the New York City office. (TAC ¶ 516). Shaporov does not allege that the policy was enforced against him in a different manner than other investigators. Although Baez's retaliation claims survive to the extent that she alleges a negative performance evaluation under the 180-Day Policy, her allegations standing alone do not plausibly allege that the 180-Day Policy itself was retaliatory in nature. Plaintiffs' claims of

retaliation based on the 180-Day Policy, other than Baez's claim as noted above, will be dismissed.

        ii.      <u>The 2019 Management Specialist 3 Position.</u>

Defendants urge that Doran, Baez and Shaporov's retaliation claims related to the 2019 Management Specialist 3 Position should be dismissed because these plaintiffs were not on the civil service list and therefore not eligible for the position. Plaintiffs allege that Rosen, Coyne and Ares denied them the opportunity to apply for the position and that Vladimir Polishnik was selected, a candidate alleged to be less qualified and experienced than plaintiffs. (TAC ¶¶ 519–23). Even if the Court were to take judicial notice of the civil service list as defendants request,[6] the relevance of the list and impact on plaintiffs' claims are more appropriately assessed on a developed factual record that includes further information regarding the requirements for the position.

CONCLUSION

The following claims against the Moving Defendants in their individual capacities survive defendants' motion to dismiss: Baez's claims for retaliation under section 1983, the NYSHRL, and the NYCHRL against Byrnes, Mahoney and Dressler based on her receiving negative performance evaluations; and Doran and Linn's claims for retaliation under section 1983, the NYSHRL, and the NYCHRL against Mulhall based on the Manager of Medicaid Investigations position. All of Plaintiffs' other <u>Doran II</u> retaliation claims under section 1983, the NYSHRL, and the NYCHRL against Dressler, Byrnes, Mahoney and Mulhall are dismissed. All of Plaintiffs' <u>Doran II</u> retaliation claims under section 1983, the NYSHRL, and the NYCHRL against Meyer are dismissed. Plaintiffs' retaliation claims under section 1983, the

---

[6] https://www.cs.ny.gov/elmspublic/all/list.cfm?Exam=37915 (last accessed Apr. 20, 2021).

NYSHRL, and the NYCHRL based on the 180-Day Policy are dismissed.  Plaintiffs retaliation claims under section 1983, the NYSHRL, and the NYCHRL based on the 2019 Management Specialist 3 Position survive as asserted against individual defendants other than the Moving Defendants.

       The defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk is directed to terminate the motion (Doc 282).

       SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 26, 2021